THEODORE R. CONVERSE, receiver, *vs.* GEORGE NICHOLS, 2d,
& others.

Essex.    March 12, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Limitations, Statute of. Executor and Administrator. Corporation,* Foreign,
    Liability of stockholder. *Receiver.*

Where, after an assessment lawfully has been made upon a Massachusetts stock-
    holder in a foreign corporation, he dies and, after an administrator of his estate
    has been appointed and has qualified by giving bond, the two year period of
    limitation provided for in R. L. c. 141, § 9, passes, no action for the collection
    of the assessment can be maintained against the heirs and next of kin of the
    stockholder under R. L. c. 141, §§ 26 28, which provide for the enforcement of
    rights of action which accrue after the expiration of the two year period of lim-
    itation, since the right accrued not only before the expiration of such period,
    but also before the death of the decedent.
A citizen of Massachusetts owned stock in a certain corporation organized in a
    State whose constitution contained a provision that a stockholder in a domestic
    corporation of that nature should be liable for the debts of the corporation to
    the amount of the stock owned by him.    The statutes of the State provided for
    the adjudication by a proper court of the inability of such a corporation to pay
    its debts, for the determination of the amounts of the debts, for successive assess-
    ments upon the stockholders and for the appointment of a receiver with power to
    collect such assessments by proper proceedings in other States.    Such proceedings
    duly were taken in the State of its incorporation with regard to the corporation in
    question and an assessment was made upon the stockholders.    Thereafter the
    Massachusetts stockholder died, an administrator of his estate was appointed, the
    two year period of limitation provided for in R. L. c. 141, § 9, passed and the estate
    was fully administered.    Subsequently a second assessment duly was made in
    the court of the State where the receivership proceedings were pending, and the
    receiver by a bill in equity sought under R. L. c. 141, §§ 26–28, to enforce pay-
    ment of such assessment by the heirs and next of kin of the deceased stock-
    holder, contending that the right of action was, as was required by § 27, one
    which accrued after the expiration of the period of limitation provided by R. L.
    c. 141, § 9, and which could not legally have been presented to the Probate Court.
    *Held,* that the bill must be dismissed, since, before the estate of the deceased
    stockholder had been fully administered, because of the continued pendency of
    the receivership proceedings, the claim of the plaintiff, although uncertain in
    amount, had become one which "may become justly due from the estate,"
    and which therefore under R. L. c. 141, § 13, might have been presented to the
    Probate Court and provision made for the reservation of funds or the giving of
    security for its payment.
The object of the proceedings before the Probate Court under R. L. c. 141, §§ 13, 14,
    which provide for the retention of funds by an executor or administrator on pres-
    entation by a creditor of the estate, before the estate is fully administered, of a
    claim the right of action to enforce which does not accrue within two years after

the giving of the administration bond, is not to collect the claim presented nor even finally to adjudicate its amount or validity, but simply to extend the period of time after which by R. L. c. 141, § 9, it otherwise would be barred.

A receiver of a foreign corporation, lawfully appointed by a court of the State of its incorporation with power " *to sue for* . . . *compromise and settle any and all stockholders' liability that may exist under the constitution and laws of* " such State "or otherwise, and to prosecute and sue for the amount of such liability or any assessments that may be made by " the court which appointed him " on account thereof for the satisfaction of the claims of the creditors " of the corporation, since he is entitled to prosecute a claim for the enforcement of an assessment against a stockholder when it becomes due, is the proper person to present to the Probate Court, in which the estate of a Massachusetts stockholder of the corporation is being administered, a petition under R. L. c. 141, § 13, seeking to have funds of the estate reserved or security given for the payment of an assessment which may be made and become due after the expiration of the two year period of limitation provided for by R. L. c. 141, § 9.

HAMMOND, J.   This is a bill in equity brought * by the receiver of a Minnesota corporation under the provisions of R. L. c. 141, §§ 26–28, inclusive, against the heirs at law of John B. Nichols, late of Haverhill, in the county of Essex, deceased, and the legatees under the will of his widow, to enforce his personal liability as a stockholder of that corporation for its indebtedness.   The case was heard in the Superior Court upon the question of a final decree upon the bill, answer, replication and an agreed statement of the evidence, and the law of Minnesota, as shown by printed copies of the statutes and the printed reports of its Supreme Court.   No question of pleading was raised. The judge reserved and reported the evidence and all questions of law for the consideration of this court, " such decree to be entered thereon as equity may require."

Two assessments were made, the first on December 22, 1902, and the second on June 11, 1907.   Inasmuch as the first was made before the death of John B. Nichols, the stockholder, it is barred by the statute of limitations, and no action to recover the amount thereof can be maintained against either the administrator or the heirs.   R. L. c. 141, §§ 9, 27.

The second assessment, however, was made after the death of Nichols, (which occurred on March 1, 1903,) and after April 26, 1905, when his estate had been fully administered; and the main question is with reference to this assessment.

* The bill was filed in the Superior Court for the county of Essex on August 15, 1907.

" By the policy and provisions of our laws, the remedy of a creditor upon the heirs and devisees of a deceased person, is extremely limited. Every demand which can be made and enforced against the estate of a deceased person, is to be pursued against the administrator where it can be done, and the whole estate, personal and real, is in effect made assets in his hands to meet such claims." Shaw, C. J., in *Hall* v. *Bumstead*, 20 Pick. 2, 6. The remedy is that provided by the statute and none other.

The statute upon which the plaintiff relies is R. L. c. 141, §§ 26–28. These sections in substance provide that under certain conditions therein fully set forth a creditor of the estate of the deceased may recover his claim against the heirs or legatees, but this right to recover does not extend to a claim which comes within the provisions of § 13 of the same chapter. This last named section, so far as material, runs as follows : " A creditor of the deceased, whose right of action does not accrue within two years after the giving of the administration bond, may present his claim to the Probate Court at any time before the estate is fully administered ; and if, upon examination thereof, the court finds that such claim is or may become justly due from the estate, it shall order the executor or administrator to retain in his hands sufficient assets to satisfy the same. But if a person interested in the estate offers to give bond to the alleged creditor with sufficient surety or sureties for the payment of his claim if it is proved to be due, the court may order such bond to be taken, instead of requiring assets to be retained as aforesaid."

In discussing the scope of this section we assume, without deciding, in favor of the plaintiff, that his right of action did not accrue within two years after the giving of the administration bond (an assumption without which the plaintiff cannot get on at all) ; and the question is whether on that assumption it appears that his claim could legally have been presented to the Probate Court under this section. If it could, then this action cannot be maintained. §§ 26, 27. *Pratt* v. *Lamson*, 128 Mass. 528, and cases cited.

The history of the legislation leading up to this section is reviewed to some extent in *Bassett* v. *Drew*, 176 Mass. 141, and

need not be repeated here. As originally framed it applied only to cases where at the time of the presentation of the petition to the Probate Court the claim, though not payable, was justly due; and such was its form for many years. Rev. Sts. c. 66, § 5. Gen. Sts. c. 97, § 8. And consequently it was held in *Ames* v. *Ames*, 128 Mass. 277, that if the existence of the claim depended upon a future contingency it was not a debt within the statute. In that case Morton, J., in giving the opinion of the court (p. 278), said: " To bring himself within 'this provision, a person must show that he is a creditor of the deceased, . . . and that he has, at the time of his petition, a claim which is ' justly due from the estate.' It is not enough to show that the deceased has entered into a contract with him under which a liability may or may not arise in the future." And again (p. 279): " The provisions of . . . [the statute] . . . are confined to cases of creditors who have debts due from the estate, either payable presently or in the future. They do not extend to cases where the deceased has entered into a contract which may possibly result in a debt at some future time, but upon which there is no existing debt at the time of the application to the judge of probate. . . . Nothing has become due under this contract. It is entirely uncertain whether or not anything will ever become due. The existence of any demand or debt depends upon a contingency."

But by St. 1879, c. 71, the statute, as it then stood (Gen. Sts. c. 97, § 8), was amended by inserting the words "or may become," so that it read substantially as it now stands in R. L. c. 141, § 13. It is easy to see that this amendment has made a radical change in the statutes, but it is not so easy to see how radical the change is, or by a formula to prescribe in advance the exact limits of the change.

In *Bullard* v. *Moor*, 158 Mass. 418, it was said by Holmes, J., that the statute must be construed reasonably, and that it could not have been intended to enable any one who has an outstanding contract made by a deceased person to suspend the settlement of the estate indefinitely without regard to the probability of anything ever becoming due upon the contract; and it was held accordingly that, where the holder of a contract of indemnity had no notice of any valid claim, against which he was to be

indemnified, until after the estate of the indemnitor had been fully administered, he was not obliged to apply to the Probate Court for a retention of assets, but could proceed immediately against the heirs.

In *Peabody* v. *Allen*, 194 Mass. 345, this particular feature of the statute was carefully considered. In that case it appeared that the plaintiff and the defendant had bought certain real estate under an agreement to share equally the profits and losses. The purchase money was all advanced by the petitioner. The estate was sold at a loss. Between the purchase and sale it had been injured by a change of grade made under the right of eminent domain for which the parties were entitled to compensation, a suit for which was still pending. Although it was uncertain whether after the recovery of this compensation there would be anything due from the respondent to the petitioner, yet it was held that the claim was within the statute. It was a claim which might become justly due, the court saying that " it seems reasonable to hold that the statute included a claim like that of this petitioner where all the elements of liability were fixed except the amount finally to be credited upon the loss." And it was so held notwitstanding the cause of action did not arise until the settlement of the suit for damages caused by the act of eminent domain.

The liability of Nichols, the stockholder, is based upon the provision of the Constitution of Minnesota. It is contractual. As was said by Braley, J., in *Converse* v. *Ayer*, 197 Mass. 443, 453 (a case concerning the first assessment in this very case), in which the whole subject was elaborately discussed : " The obligation [under the Constitution], even if created by operation of law, nevertheless was essentially contractual in character, and, if the corporate assets were insufficient to satisfy the debts of creditors, the defendant, while he remained a stockholder, voluntarily had entered into an implied contract to assume the deficiency to the amount of the par value of his holding."

Long before the death of Nichols, the stockholder, proceedings had been instituted in the State of Minnesota in accordance with the laws of that State, for the enforcement of this liability. It. appears from the record that from and after May 25, 1901, the date of a foreclosure sale under a mortgage, the corporation was

" wholly without assets or property of any sort or nature," out of which the claim of the creditors of the corporation or any part of such claims could " be paid, collected or realized." Upon proper proceedings had, the plaintiff was appointed receiver on August 16, 1901. The indebtedness of the corporation was more than $400,000, and this had been judicially ascertained as early as December 22, 1902, and the first assessment was made upon the stockholders. And all this took place during the lifetime of Nichols. In a word, Nichols, as one of the shareholders, was held liable to pay this large indebtedness to the extent of $27,000, the par value of his stock, and the court was proceeding to enforce that liability. It had made one assessment, but by the express provision of the statute its power was not exhausted by the first assessment. The statute provides that " in any case where the court shall have levied an assessment against stockholders . . . for a less amount or proportion than the full amount of the liability upon or on account of the stock . . . , and it shall hereafter be made to appear to the satisfaction of said court, by petition or otherwise, . . . that by reason of the insolvency of stockholders, or for any other cause, it is necessary or desirable or for the interest of creditors," then " another and further assessment" may be made, and " in the same manner," still " further and additional assessments" may be made, " not exceeding in the aggregate the maximum amount of liability." Gen. Laws of Minn. 1899, c. 272, § 7.

Before the estate of the deceased stockholder had been fully administered, the corporation had failed to pay its debts and had entirely exhausted its resources ; a receiver had been appointed to wind up the concern, the amount of the debts for which the stockholders were liable had been judicially determined, and they greatly exceeded the par value of the stock held by Nichols. Whether the whole amount of the par value would be required was not known, it is true, but the amount required depended not upon any contingency except as to the amount which would be recovered from the other stockholders, or in other words, how much should be deducted from the full extent of his liability. It was not a case where it was doubtful whether the constitutional obligation ever would be called into active play. It had been called into play. The judicial machinery was

at work and the work was to continue until whatever was needed from a stockholder to meet the debts was paid by him. The second assessment was to discharge the same liability as that for which the first was laid, and was upon the same contract and to pay the same debts. The case cannot be distinguished in principle from *Peabody* v. *Allen*, 194 Mass. 345.

If it be said that it could not be ascertained by the Probate Court how much finally would be due, the answer is that the court has not to determine finally that question. The object of the proceedings before the Probate Court under this statute is not to collect the claim presented, for it is not yet payable, nor even finally to adjudicate its amount or validity (R. L. c. 141, § 14), but simply to extend the time within which otherwise by the special statute of limitations it would be barred. Nor is it necessary that there should be sufficient personal property as assets in the hands of the administrator. An order under this statute to hold assets, even if there be no personal assets in his hands, is not without effect. On the contrary the legal effect is to hold him answerable for the claim beyond the special limitation of two years, and extends the lien upon the real estate of the deceased for the satisfaction of the claim as it shall be finally established in a subsequent suit, brought within one year after the claim becomes payable. *Bassett* v. *Drew*, 176 Mass. 141, and cases cited. R. L. c. 141, § 14. We are of opinion that before the estate of Nichols, the deceased stockholder, had been fully administered the plaintiff's claim had become a claim which "may become justly due from the estate" within the meaning of that phrase as used in R. L. c. 141, § 13.

It is objected however by the plaintiff that the receiver was not authorized to present any such claim to the Probate Court in this State. But it sufficiently appears from the decree appointing him receiver that he was empowered " to sue for, . . . compromise, and settle any and all stockholders' liability that may exist under the Constitution and laws of the State of Minnesota or otherwise, and to prosecute and sue for the amount of such liability or any assessments that may be made by this court on account thereof for the satisfaction of the claims of the creditors " of the corporation, including fees and costs either in the State of Minnesota or the courts of any other State or Territory.

Since he was entitled to prosecute the claim when due, he was the proper person to present the petition to the Probate Court. See *Hammond* v. *Granger*, 128 Mass. 272, 277.

*Bill dismissed with costs.*

*B. G. Davis,* (*C. C. Colby* with him,) for the plaintiff.
*B. B. Jones,* (*J. J. Ryan* with him,) for the defendants.